**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

DAVID S.,

                        Plaintiff,

       v.                                   3:20-CV-1392
                                            (DJS)

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

**APPEARANCES:**                       **OF COUNSEL:**

LACHMAN & GORTON          PETER A. GORTON, ESQ.
Attorney for Plaintiff
1500 E. Main Street
P.O. Box 89
Endicott, New York 13761

U.S. SOCIAL SECURITY ADMIN.    CHRISTOPHER L. POTTER, ESQ.
OFFICE OF REG'L GEN. COUNSEL
Attorney for Defendant
J.F.K. Federal Building - Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

**DANIEL J. STEWART**
**United States Magistrate Judge**

## MEMORANDUM-DECISION AND ORDER[1]

    Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a

decision by the Commissioner of Social Security that Plaintiff was not disabled for

---

[1] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  _See_ Dkt. No. 7.

purposes of Disability Insurance Benefits and Supplemental Security Income.  Dkt. No. 1.  Currently before the Court are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings.  Dkt. Nos. 15 & 18.  Plaintiff also filed a reply brief.  Dkt. No. 21.  For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is denied and Defendant's Motion for Judgment on the Pleadings is granted.  The Commissioner's decision denying Plaintiff disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I. RELEVANT BACKGROUND

### A.  Factual Background

Plaintiff was born in 1971, making him 48 years old on the date of the decision at issue in this case.  Dkt. No. 14, Admin. Tr. ("Tr.") at p. 206.  Plaintiff is a high school graduate who completed one year of college.  Tr. at p. 246.  His prior employment includes management and supervisory roles at an automotive parts wholesaler, an automotive parts retail store, and, most recently, an automotive repair shop.  Tr. at pp. 40-43, 234, 246.  He has also served in the New York National Guard and as a local volunteer firefighter.  Tr. at pp. 51, 58.  Plaintiff stopped working in September 2016 after his chronic back pain became worse.  Tr. at p. 45.  While Plaintiff was not working, he gained a significant amount of weight and his obesity exacerbated his back pain.  Tr. at pp. 45, 337, 380.  In addition to chronic low back pain and morbid obesity, Plaintiff bases his disability claim on a number of physical impairments including meralgia

paresthetica, degenerative arthritis, Type 2 diabetes mellitus, and ulcerative colitis.  Tr. at p. 245.

## B.  Procedural History

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income in September 2018, alleging an onset date of September 15, 2016.  Tr. at pp. 206-219.  His applications were denied.  Tr. at pp. 96-119, 122-137.  Plaintiff requested a hearing, and a hearing was held on August 7, 2019 before Administrative Law Judge ("ALJ") Kenneth Theurer at which Plaintiff and vocational expert ("VE") Robert Baker testified.  Tr. at pp. 35-64.  The ALJ issued a determination on September 19, 2019, finding Plaintiff was not disabled.  Tr. at pp. 11-21.  Plaintiff requested review of the ALJ's determination, and the Appeals Council denied the request for review on September 15, 2020.  Tr. at pp. 1-7.  Plaintiff filed his Complaint in this action on November 11, 2020.  Dkt. No. 1.

## C. The ALJ's Decision

In his decision, the ALJ made a number of findings of fact and conclusions of law.  First, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2021. Tr. at p. 13.  The ALJ next found that Plaintiff had not engaged in substantial gainful activity since September 15, 2016, the alleged onset date.  *Id.*  Next, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease of the lumbar spine, morbid obesity and degenerative joint disease of the bilateral hips."  Tr. at pp. 13-14.  Fourth, the ALJ found that Plaintiff did

3

not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings").  Tr. at pp. 14-15.  Fifth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of sedentary work, finding he:

> could occasionally lift and carry ten pounds, sit for approximately six hours, stand or walk for approximately two hours in [an] eight hour day with normal breaks; occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; occasional balancing, stooping, crouching, and no kneeling or crawling.  Moreover, [Plaintiff] must avoid concentrated exposure to smoke, dust, or respiratory irritants.

Tr. at p. 15.  Sixth, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. at p. 19.  Seventh, the ALJ found that Plaintiff was in the "younger individual" category, has at least a high school education, and is able to communicate in English. *Id.*  Relying upon the VE testimony, and taking into account Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs existing in significant numbers in the national economy that Plaintiff could perform.  Tr. at pp. 19-20.  The ALJ, therefore, concluded that Plaintiff had not been under a disability from September 15, 2016 through the date of his decision.  Tr. at p. 20.

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health &*

*Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).   Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.   *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).   "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."

*Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of proof as to the first four steps, while the [Commissioner] must prove the final one.

6

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

**A.  The ALJ's RFC Determination Is Supported by Substantial Evidence.**

**1.  The ALJ's Evaluation of the Medical Opinions, Including Those Addressing Time Off-Task, Absenteeism, and the Need to Alternate Positions, is Supported by Substantial Evidence**

Plaintiff's claim was filed after March 27, 2017, and therefore, the analysis is governed by 20 C.F.R. §§ 404.1520c and 416.920c, which describe how the Social Security Administration presently considers and articulates medical opinions.  The SSA no longer defers or gives any specific evidentiary weight to any medical opinions, including those from the claimant's treating medical sources. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the ALJ must now evaluate the medical opinions and prior medical findings by considering a list of five factors: the supportability of the opinion, consistency with the record and other sources, the relationship that the writer of the opinion has with the claimant, the specialization of the writer, and "other factors." 20 C.F.R. § 404.1520c(c)(1-5).  "Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must 'still articulate how [he or she] considered

the medical opinions' and 'how persuasive [he or she] find[s] all of the medical opinions.'" *Andrew G. v. Comm'r of Soc. Sec.*, 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quoting 20 C.F.R. §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1)). Of the five factors, the two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("Revisions to Rules"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5853 (Jan. 18, 2017); *see also Andrew G. v. Comm'r of Soc. Sec.*, 2020 WL 5848776, at *5.

A medical opinion is a statement from a medical source about "what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions." 20 C.F.R. § 404.1513(a)(2). The ALJ must consider and articulate how supportable the medical opinion is when compared to the rest of the record. 20 C.F.R. § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinion(s) . . . will be." *Id.* The Administrative Law Judge must additionally consider how consistent the opinion is with evidence from other medical or nonmedical sources. 20 C.F.R. § 404.1520c(2).

While consistency and supportability are the two most important factors, the ALJ must also consider the medical source's relationship with the claimant, evidenced by factors such as length of treatment and frequency of examinations, among other things, as well as any type of specialization that the medical provider may have. While an

8

opinion from a treating provider is no longer presumptively determinative, "[t]he new regulations cannot be read as a blank check giving ALJs permission to rely solely on agency consultants while dismissing treating physicians in a conclusory manner." *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 885 (D. Vt. 2021).

As set out below, the ALJ in this case appropriately considered the various medical opinions for consistency and supportability in the overall record, and ultimately found the opinions of an examining and a non-examining consultative  physician to be more persuasive than the treating source opinions.  In doing so, the ALJ articulated how he considered the medical opinions and his reasons for finding the various aspects of the opinions to be persuasive or unpersuasive.

On November 2, 2018, Dr. Gilbert Jenouri performed a consultative physical examination of Plaintiff. Tr. at pp. 345-348.  Prior to the examination, Plaintiff reported difficulties with his lower back and hips, with sharp pain that radiated to his knees.  Tr. at p. 345.  Dr. Jenouri observed Plaintiff to be in no acute distress, but demonstrating an antalgic gait.  Tr. at p. 346.  He could walk on his heels and toes with difficulty, with a forward tilting stance but no assistive devices such as a cane.  *Id.*  Plaintiff required no help changing for the examination or getting on and off the examination table and was able to rise from a chair without difficulty.  *Id*.

Dr. Jenouri found Plaintiff to have reduced flexion, extension, rotation and lateral flexion bilaterally in the cervical and lumbosacral spine.  Tr. at pp. 346-347.  Plaintiff also had a positive straight leg raise.  Plaintiff had full range of motion in his shoulders,

9

elbows, wrists, and hands and full strength in the upper and lower extremities, but limitations in the use of his hips, knees, and ankles.  Tr. at p. 347.  His hand and finger dexterity were intact, and he had full grip strength in both hands.  *Id.*

Dr. Jenouri opined that Plaintiff had "moderate restrictions walking and standing long periods, bending, stair climbing, lifting, and carrying."  Tr. at p. 348.  The ALJ found Dr. Jenouri's opinion to be persuasive "[t]o the extent [it] is consistent with the above residual functional capacity," because it is "consistent with and supported by the entirety of the medical evidence of record."  Tr. at pp. 17-18.

On November 8, 2018, state agency consultant Dr. A. Saeed prepared an opinion based upon his review of Plaintiff's then-current medical records, including the consultative examination.  Tr. at pp. 101-104.  Dr. Saeed opined Plaintiff was capable of occasionally lifting or carrying ten pounds and could frequently lift and carry weights less than ten pounds.  Tr. at p. 102.  He further opined Plaintiff could stand and/or walk for a total of two hours each workday, with normal breaks.  *Id.*  He also opined that Plaintiff could sit for a total of about six hours during the workday, again with normal breaks.  *Id.*  In Dr. Saeed's opinion, Plaintiff was limited to occasionally climbing ramps or stairs, balancing, kneeling, crouching, and crawling, and could never climb ladders, ropes, or scaffolds.  *Id.*  Dr. Saeed also opined Plaintiff should avoid concentrated exposure to vibrations, and avoid "even moderate exposure" to workplace hazards such as machinery and heights.  Tr. at p. 103.

Based upon his review of the medical records, Dr. Saeed opined that Plaintiff "can perform the full range of sed work." Tr. at p. 115. Dr. Saeed explained that his opinion was based upon imaging reports from February 2018, treatment notes, and the consultative examination report. Tr. at p. 103. This included August 2018 treatment notes where Plaintiff reported doing "excessive gardening" after receiving spinal pain injections. Tr. at p. 103. The ALJ found Dr. Saeed's opinion to be persuasive because of its consistency with "the entirety of the medical evidence of record" and the state agency consultant's "Social Security Disability program knowledge." Tr. at p. 17.

The ALJ also considered opinions from Plaintiff's treating sources. Tr. at p. 18. Dr. Kinner Mehtz, Plaintiff's primary care physician, completed a Medical Assessment form for the Broome County Department of Social Services. Tr. at pp. 350-351. He diagnosed Plaintiff with chronic low back pain, degenerative arthritis of the lumbar spine, morbid obesity, Type II diabetes, and ulcerative colitis. Tr. at p. 350. Dr. Mehta did not answer any of the specific questions on the form addressing the functional limitations impacting Plaintiff's ability to work and labeled them as "unable to assess." Tr. at pp. 350-351. Still, he opined that Plaintiff should be "excused from participating in work-related activities pending treatment, follow-up, and/or medication management." Tr. at p. 351.

Physician's Assistant ("PA") Jonathan Gdovin prepared two opinions that appear in the record. Tr. at pp. 353, 386-388. The first, dated March 13, 2018, is a Medical Assessment Form prepared for the Broome County Department of Social Services. Tr.

at p. 353.   PA Gdovin did not complete the sections related to specific functional limitations, but opined that Plaintiff was unable to work, although able to participate in treatment and rehabilitation activities.   *Id.*

PA Gdovin's July 11, 2019 opinion provides greater specificity regarding Plaintiff's functional limitations, but with minimal narrative explanation.   Tr. at p. 386-388.   As described in this opinion, Plaintiff was able to sit for approximately three hours out of an eight-hour work day, could stand and/or walk for approximately one hour each eight-hour workday, and would need to change positions every fifteen to thirty minutes due to pain.   Tr. at p. 387.   PA Gdovin further opined that Plaintiff could occasionally lift up to five pounds per day but should never lift any greater weight.   *Id*.   He also recognized that Plaintiff was obese and opined that Plaintiff's functional limitations were made more severe by his obesity, including Plaintiff's ability to sit, stand, and walk.   Tr. at pp. 387-388.   PA Gdovin opined that Plaintiff's weight also negatively impacted his ability to sustain a consistent work pace and maintain attention and concentration.   Tr. at pp. 386-388.

On July 22, 2019, Plaintiff's pain management physician, Dr. Anne Calkins, prepared an opinion of Plaintiff's functional limitations.   Tr. at p. 391.   She noted Plaintiff's diagnoses of chronic lower back pain, ulcerative colitis, and morbid obesity and current pain medication of medical cannabis.   Tr. at p. 391-392.   Dr. Calkins opined that the pain and fatigue from Plaintiff's physical impairments resulted in diminished

concentration and work pace and would cause Plaintiff to be off-task more than one-third of the workday and miss more than four workdays per month. *Id.*

In Dr. Calkins' opinion, Plaintiff could sit for approximately six hours total in the workday but would need to change positions approximately every ten to fifteen minutes. Tr. at p. 392.  She further opined that Plaintiff could stand or walk for approximately two hours total in the workday.  *Id.*  In her opinion, Plaintiff could frequently lift up to five pounds, and could occasionally lift over ten pounds.  *Id.*  She noted Plaintiff's obesity, and found that it exacerbated Plaintiff's limitations including fatigue, difficulty sustaining work pace, and pain.  Tr. at p. 393.  Dr. Calkins had only been treating Plaintiff since March 2019 and did not suggest when his physical limitations began.  Tr. at pp. 376, 393.  She stated that her opinion did encompass Plaintiff's current condition as of July 22, 2019.  Tr. at p. 393.

The ALJ found Dr. Mehtz's opinion and PA Gdovin's March 13, 2018 opinion to be "not persuasive" in light of their cursory nature and absence of any function-by-function analysis.  Tr. at p. 18.  The ALJ found PA Gdovin's July 11, 2019 to be more informative, but still "less persuasive" than that of Dr. Saeed or Dr. Jenouri due to a lack of support in the longitudinal record.  *Id.*  The ALJ found Dr. Calkins' opinion regarding Plaintiff's ability to lift and sit, walk, and stand to be supported by the record, but rejected the remainder of her opinion as "speculative" and "not supported by the objective evidence" or "an explanation as to the basis for the severity of the restrictions." *Id.*

13

Plaintiff contends that the ALJ's reliance on the consultative opinions was misplaced. However, "an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability." *Gamble v. Comm'r of Soc. Sec.*, 2016 WL 4491710, at *5 (N.D.N.Y. July 25, 2016), *report-recommendation adopted by* 2016 WL 4487780 (N.D.N.Y. Aug. 25, 2016); *see also Jacqueline L. v. Comm'r of Soc. Sec.*, 515 F. Supp. 3d 2, 11 (W.D.N.Y. 2021) ("…the new regulations eliminate the 'treating physician rule,' and the opinion of a consultative examiner may override the opinion of a treating physician, particularly where the opinion of the consultative examiner is better supported by the record."). Likewise, "[i]t is well settled that, under both the old and new regulations concerning the evaluation of medical evidence, an ALJ may rely on the opinion of a non-examining state agency consultant in disability claims." *Amber H. v. Saul*, 2021 WL 2076219, *5 (N.D.N.Y. May 24, 2021) (citing *Tamara M. v. Saul*, 2021 WL 1198359, at *7 (N.D.N.Y. Mar. 30, 2021).

To explain the basis for his opinion, Dr. Saeed identified the records most relevant to his conclusions,[2] and Dr. Jenouri's report included a summary of his examination findings. Tr. at pp. 103-104, 346-348. In contrast, none of the treating source opinions provided significant narrative explanation. Here, the ALJ conducted an

---

[2] That Dr. Saeed's explanation may not have complied with the SSA's Program Operations Manual System ("POMS").does not alter this Court's finding that the ALJ's evaluation of the opinion evidence is supported by substantial evidence. *See Tejada v. Apfel*, 167 F.3d 770, 775 (2d Cir. 1999) (POMS guidelines do not bind the Commissioner)..

appropriate evaluation of all available medical opinions from treating and non-treating sources for consistency and supportability with the overall record.

First, the ALJ considered the physician-prepared imaging reports from 2017 and 2019, showing mild degenerative disc disease without significant deterioration or other changes over time.  Tr. at pp. 16, 362-363, 374-375.  The ALJ also reviewed the longitudinal record, including the available treatment notes from Dr. Mehtz, PA Gdovin, and Dr. Calkins.  Tr. at pp. 16-17.  The ALJ found no evidence that contradicted the objective findings in the November 2018 consultative examination. Tr. at p. 16.  Instead, he found consistent reports of mechanical back pain, knee pain, and hip pain, but a preference for conservative treatment methods including limited physical therapy and a recommendation that Plaintiff engage in "gentle walking exercises" and other home exercises intended to promote weight loss.  Tr. at pp. 16, 336, 372.  With regard to pain management, Plaintiff declined further spinal injections after two sessions provided short-term relief and was currently treating with medical marijuana and over the counter pain medication.  Tr. at pp. 17, 336, 342, 367, 370, 372.  Taking all these records into account, the ALJ's conclusion that the less restrictive consultative opinions from Dr. Saeed and Dr. Jenouri were more persuasive is supported by substantial evidence.

Plaintiff also makes several specific objections to the ALJ's consideration of the treating source opinions.  Plaintiff contends that the ALJ improperly rejected PA Godvin's and Dr. Calkins' "undisputed" opinions that he needed to frequently change

15

positions, perhaps as often as every ten minutes.[3]  Tr. at pp. 387, 392.  In raising this

contention, Plaintiff has not identified any record evidence to support such extreme

limitations.  *See Charlotte K. v. Comm'r of Soc. Sec.*, 2018 WL 4153925, at *13

(N.D.N.Y. August 29, 2018).  In addition, the RFC determination that Plaintiff is

capable of sitting for up to six hours total does not restrict all movement or change of

position.  As the Second Circuit has observed, "[t]he regulations do not mandate the

presumption that all sedentary jobs in the United States require the worker to sit without

moving for six hours, trapped like a seat-belted passenger in the center seat on a

transcontinental flight."  *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004).

Moreover, the restrictive opinions of PA Gdovin and Dr. Calkins were not

undisputed as to Plaintiff's ability to sit for extended periods and his need to alternate

positions.  Dr. Saeed, whose opinion the ALJ deemed "persuasive," found that Plaintiff

was capable of sitting for up to six hours during the weekday and could perform a full

range of sedentary work, with normal breaks, and thus necessarily found that Plaintiff

would not require an increased ability to change positions throughout the workday.  Tr.

at pp. 17, 102-104.  "[I]n order to perform a full range of sedentary work, an individual

must be able to remain in a seated position for approximately 6 hours of an 8-hour

workday, with a morning break, a lunch period, and an afternoon break at approximately

---

[3] At the hearing, VE Baker testified in response to questioning from Plaintiff's counsel that an individual's need to alternate positions from sitting to standing every fifteen minutes would require accommodation in the form of a sit/stand workstation, but did not specify whther this accommodation would erode the number of sedentary jobs available.  Tr. at pp. 62-63.

2-hour intervals." *Natasha D. v. Comm'r of Soc. Sec.,* 2020 WL 1862966, at *9 (N.D.N.Y. Apr. 13, 2020) (quoting *Bullis v. Comm'r of Soc. Sec.*, 2015 WL 5177733, at *7 (N.D.N.Y. Sept. 4, 2015)).

A similar defect afflicts Plaintiff's argument that the ALJ failed to adequately consider time off-task and absenteeism in his RFC determination. At Plaintiff's hearing, VE Baker testified that maximum employer tolerance for off-task behavior is typically fifteen percent of the workday, and tolerance for absenteeism is typically no more than one unexcused absence per month. Tr. at p. 62. Anything greater would rule out all employment. *Id*.

Both PA Gdovin and Dr. Calkins opined that Plaintiff would be off task more than 33% of the time, and would likely miss more than four days of work each month. Tr. at pp. 386-387, 391-392. However, neither the opinions, relevant treatment notes, nor Plaintiff's arguments here identify any record evidence to support these extreme limitations. *See Smith v. Berryhill*, 740 F. App'x 721, 724-26 (2d Cir. 2018) (ALJ properly rejected opinions regarding time "off task" when the opinions lacked support in their own treatment notes and other evidence of record). Notably, Dr. Calkins' opinion regarding time off-task and absenteeism is premised only on Plaintiff's pain, not any mental impairments. Tr. at p. 391. Thus, in rejecting these extreme limitations, the ALJ could rely instead on Dr. Saeed's conclusion that Plaintiff was physically capable of performing the full range of sedentary work, as well as Dr. Jenouri's opinion that Plaintiff had no more than "moderate" limitations in most exertional and postural

areas. *See Smith v. Berryhill*, 740 F. App'x at 725 (consultative physicians' opinions that plaintiff could perform simple sedentary work contradicted substance of plaintiff's claim that his knee and back injuries would keep him off task or absent from work four or more days per month); *c.f., Jennifer E. v. Comm'r of Soc. Sec.*, 2020 WL 2059823, at *9 (N.D.N.Y. Apr. 29, 2020) (distinguishing *Smith* where absenteeism and time off task were attributed to mental impairments). In addition, the ALJ recognized a number of daily activities suggestive of greater concentration on Plaintiff's behalf. *See* Tr. at pp. 17, 254, 336, 342, 345.

### 2. The ALJ's Evaluation of Plaintiff's Testimony Is Supported by Substantial Evidence

In addition to the medical opinion evidence, the ALJ also considered Plaintiff's testimony regarding his symptoms and functional limitations. Tr. at pp. 15-17. Plaintiff testified that he could sit for no longer than fifteen minutes in a "standard office chair" before he would need to stand up or lay down. Tr. at pp. 53-54. The ALJ contrasted this with Plaintiff's documented activities of daily living in the treatment record, his hearing testimony, and the consultative examination report, which included driving, cooking several times per week (often while seated), and grocery shopping for up to two hours with use of a scooter. Tr. at pp. 17, 254, 345. There were also documented instances of more extensive physical activity, including "excessive gardening" and home exercise that helped him lose about forty pounds as of February 2018. Tr. at pp. 336, 342. The ALJ was entitled to consider Plaintiff's activities in this manner as part

of the RFC analysis. *See Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020) (allowing ALJ to consider daily activities in determining consistency with alleged symptoms); *Herrington v. Berryhill*, 2019 WL 1091385, at *7 (D. Conn. Mar. 8, 2019) (activities of daily living are appropriate factors for an ALJ to consider when assessing a plaintiff's claimed symptoms and limitations). In doing so, the record contains substantial evidence for the ALJ's conclusion regarding subjective complaints.

### 3. The ALJ's RFC Determination Appropriately Accounted for Plaintiff's Obesity

Plaintiff argues that the ALJ's RFC determination fails to adequately address Plaintiff's weight and body mass index ("BMI"), which fall within the classification of morbidly obese. Pl.'s Mem. of Law at pp. 23-24. This argument is not persuasive. The ALJ specifically recognized Plaintiff's morbid obesity as a severe impairment, and referenced the potential exertional and respiratory impacts when determining Plaintiff's RFC. Tr. at pp. 13 & 15. In limiting Plaintiff to sedentary work, the ALJ also relied upon the opinions of Dr. Saeed, Dr. Jenouri, and to a lesser extent, PA Gdovin, who all considered the impact of Plaintiff's obesity. Tr. at pp. 97, 345, 387-388; *Dieguez v. Berryhill,* 2017 WL 9534745, at *13 (S.D.N.Y. February 28, 2017) ("an ALJ's determination can reflect an appropriate consideration of obesity if it adopts the limitations suggested by physicians who have directly considered the effects of obesity in their opinions.") The substantial evidence standard does not require that the ALJ reference Plaintiff's specific weight or exact BMI. *Dieguez v. Berryhill*, 2017 WL

9534745, at *13.  Accordingly, the ALJ properly considered the functional limitations associated with Plaintiff's obesity.

**B.  The ALJ's Step Five Determination Is Supported by Substantial Evidence.**

At step five, the burden shifts to the Commissioner to show there is other work that a disability claimant can perform.  *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If a claimant has non-exertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert."  *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)).

If the ALJ utilizes a VE at the hearing, the VE is generally questioned using a hypothetical question incorporating Plaintiff's limitations.  *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981).  The ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect Plaintiff's limitations.  *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009).  Where the hypothetical is based on an ALJ's RFC analysis which is supported by substantial facts, the hypothetical is proper.  *Id.* at 276-77.

VE Baker's hearing testimony included a response to a hypothetical question based upon Plaintiff's RFC.  Tr. at pp. 59-64.  Because this court has found the ALJ's RFC determination is supported by substantial evidence, it also finds the ALJ's hypothetical to VE Baker was proper, and his step five determination is thus supported

by substantial evidence.  Based on the foregoing, the ALJ's decision was based upon correct legal standards, and substantial evidence supports his ultimate determination that Plaintiff was not under a disability within the meaning of the SSA through the date of the ALJ's decision.  20 C.F.R. § 404.1520(g).

## C. The Appeals Council Did Not Err by Declining to Review Dr. Calkin's September 28, 2019 Opinion

"A request for Appeals Council review of an ALJ's decision is the fourth and final stage in the administrative process of adjudicating claims for benefits under the Social Security Act."  *Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996).  At this step, the "Social Security regulations expressly authorize a [plaintiff] to submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision."  *Id.* (citing 20 C.F.R. §§ 404.970(b), 416.1470(b)).  "'[N]ew evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision.'" *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (quoting *Perez v. Chater*, 77 F.3d at 45).

In this case, following the ALJ's decision Plaintiff submitted a partially completed medical opinion questionnaire dated September 28, 2019 from Dr. Calkins that included some narrative.  Tr. at pp. 30-33.  In concluding that there was no basis to disturb the ALJ's determination, the Appeals Council stated:

> You submitted evidence from Anne Calkins, M.D. dated September 28, 2019 (5 pages).  The Administrative Law Judge decided your case through

September 19, 2019.  This additional evidence does not relate to the period at issue.  Therefore, it does not affect the decision about whether you were disabled beginning on or before September 19, 2019.

Tr. at p. 2.

Plaintiff correctly argues that Dr. Calkins' opinion, dated nine days after the ALJ's decision, "cannot be deemed irrelevant solely because of timing."  *Newbury v. Astrue*, 321 F. App'x 16, 18 n. 2 (2d Cir. 2009) (summary order) (citing *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004)).  However, Dr. Calkins declined to specify what period her new opinion covered, stating that the start period is "unknown to me" and only noting that her first examination of Plaintiff occurred on March 25, 2019.  Tr. at p. 33.  Given this vague timeline, the Appeals Council had substantial evidence to conclude that this new opinion was not relevant to the period under review by the ALJ.

Furthermore, the court cannot conclude that any new information found in Dr. Calkin's September 28, 2019 opinion is potentially material and thus necessitating remand.  Plaintiff contends that the opinion is significant because it indicates that Plaintiff's ability to lift is negatively impacted by his obesity.  Pl.'s Mem. of Law at p. 26.  However, this new opinion provides no indication to what extent Plaintiff's ability to lift deteriorated since Dr. Calkins' original opinion dated July 22, 2019.  Tr. at pp. 33, 393.  Dr. Calkins also contends that Plaintiff's pain has increased despite some recent weight loss, but does not explain any associated functional limitations.  Accordingly, this court cannot conclude that Dr. Calkins' more recent opinion creates "a reasonable possibility" that the new evidence would have prompted the Commissioner to decide

22

Plaintiff's disability claim differently.  *See Guerra v. Saul*, 778 F. App'x 75, 77-78 (2d Cir. 2019) ("The concept of materiality requires ... a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently."); *see also Amanda L.C. v. Comm'r of Soc. Sec.*, 2020 WL 4783169, at *6 (N.D.N.Y. August 18, 2020).

## IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 15) is **DENIED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings (Dkt. No. 18) is **GRANTED**; and it is further

**ORDERED,** that the decision of the Commissioner denying Plaintiff disability benefits is **AFFIRMED**; and it is further

**ORDERED,** that Plaintiff's Complaint is **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court shall serve copies of this Memorandum-Decision and Order on the parties.

Dated:   July 21, 2022
            Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

23